UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RACHEL A. RYAN,

                                 Plaintiff,         Case # 18-CV-388-FPG

v.                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

**INTRODUCTION**

Plaintiff Rachel A. Ryan seeks review of the decision of the Social Security Administration ("the SSA") that she is no longer disabled. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 17, 23. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On October 19, 2010, the SSA approved Ryan's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications and found her disabled as of June 1, 2007 due to bipolar disorder and asthma. Tr. 104-109. On October 6, 2014, however, the SSA informed Ryan that it was terminating her benefits. Tr. 114-16, 118-22. Specifically, after reviewing certain medical records, the SSA determined that Ryan was no longer disabled because her health improved and she could work. *Id.*

Ryan objected to this determination and appeared before Administrative Law Judge Bryce Baird ("the ALJ") for a hearing. Tr. 26-78. The ALJ issued an unfavorable decision on March

15, 2017, and the Appeals Council denied Ryan's request for review of that decision. Tr. 1-5, 11-20. On March 27, 2018, Ryan appealed to this Court. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

When the Court reviews a final decision from the SSA, it "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

### II. Disability Determination

An ALJ uses a five-step sequential evaluation to determine whether a claimant is disabled. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, then he or she is not disabled. If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding the limitations that stem from the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can return to his or her past relevant work, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ made the following findings that are relevant to the Court's analysis.[1] At step one, the ALJ found that Ryan had not engaged in substantial gainful activity through the date of

---

[1] To determine whether a claimant has experienced medical improvement, an ALJ follows an eight-step process in evaluating DIB claims and a seven-step process in evaluating SSI claims, both of which differ slightly from the five-step process described above. *See* 20 C.F.R. §§ 404.1594, 416.994 (effective Aug. 24, 2012 to Mar. 26, 2017). Ryan does not argue that the ALJ improperly determined that she experienced medical improvement and, therefore, for the sake of brevity, the Court does not set forth the ALJ's findings in this regard.

his decision. Tr. 13. At step two, the ALJ found that Ryan has four severe impairments: bipolar disorder, asthma, fibromyalgia, and migraine headaches. *Id.* At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal any Listings impairment. Tr. 13-15.

Next, the ALJ determined that Ryan retains the RFC to perform light work[2] with additional limitations. Tr. 17-19. Specifically, the ALJ found that Ryan can sit up to six hours and stand or walk up to four hours in an eight-hour workday; can occasionally climb stairs and ramps, balance, kneel, and crouch; cannot crawl or climb ropes, ladders, or scaffolds; cannot tolerate exposure to excessive heat, cold, humidity, or vibration, hazards like unprotected heights or moving machinery, or bright or flashing lights; can tolerate only moderate noise; and can perform simple, routine tasks with only superficial interaction with the public and frequent interaction with coworkers. Tr. 17.

At step four, the ALJ indicated that Ryan has no past relevant work. Tr. 19. At step five, the ALJ determined that Ryan can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 19-20. Specifically, a vocational expert testified that Ryan can work as a housekeeper and marker. *Id.* Thus, the ALJ found Ryan not disabled. Tr. 20.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**II.     Analysis**

Ryan argues that the RFC determination lacks substantial evidence because the ALJ improperly discounted her statements and a medical opinion as to her fibromyalgia, and therefore remand is required.[3]  ECF No. 17-1 at 12-16.  The Court agrees.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  SSR 12-2p, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012).  A fibromyalgia diagnosis does not automatically render a claimant disabled; however, "courts recognize that fibromyalgia is a disease that eludes objective measurement."  *Campbell v. Comm'r of Soc. Sec.*, No. 5:16-CV-272-GTS-WBC, 2017 WL 9509958, at *6 (N.D.N.Y. Apr. 14, 2017), *report and recommendation adopted*, 2017 WL 2304218 (May 26, 2017) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 104, 108 (2d Cir. 2003)) (quotation marks and alterations omitted).  Because fibromyalgia eludes objective measurement, "a number of district courts have overturned denials of disability claims based on fibromyalgia where the ALJ's determination turned on the lack of 'objective' evidence in the record to support the claimant's subjective complaints of pain."  *Lim v. Colvin*, 243 F. Supp. 3d 307, 316 (E.D.N.Y. 2017) (collecting cases).

Ryan argues that the ALJ improperly rejected her testimony and physician's assistant Kellie Schwartz's opinion, both of which establish that her fibromyalgia makes her off task and absent too frequently to sustain employment.  ECF No. 17-1 at 15-16.

With respect to her testimony, Ryan contends that the ALJ should have credited her assertions of pain in light of her valid fibromyalgia diagnosis.  Specifically, Ryan testified that her

---

[3] Ryan also asserts that her migraine headaches require a more restrictive RFC; however, the Court remands based on the ALJ's improper evaluation of Ryan's fibromyalgia and therefore does not discuss her headaches.

fibromyalgia causes morning stiffness that lasts two to three hours, chronic fatigue, and chronic pain in her whole body, especially her back, hips, neck, shoulders, and spine, that is dull and achy or sharp. Tr. 40-41. In his decision, the ALJ found that Ryan's impairments could reasonably be expected to produce her alleged symptoms but that her statements about the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the objective medical and other evidence." [4] Tr. 17. As noted above, however, fibromyalgia generally lacks objective support. Moreover, Ryan's complaints are consistent with fibromyalgia symptoms. *See Green-Younger*, 355 F.3d at 108 ("With regard to the issue of [the plaintiff]'s credibility, her complaints of pain in her back, legs, and upper body, fatigue, and disturbed sleep are internally consistent and consistent with common symptoms of fibromyalgia."). Accordingly, the Court finds that the ALJ improperly discounted Ryan's statements on this basis.

Ryan also argues that the ALJ should have given greater weight to the opinion of P.A. Schwartz, who examined her regularly and under the supervision of treating physician Stanley Michalski, M.D. On August 24, 2016, P.A. Schwartz completed a Fibromyalgia Medical Source Statement wherein she opined, among other things, that Ryan is likely to be off task more than 25% of the workday and absent more than four days per month. Tr. 1509.

---

[4] When an ALJ evaluates a claimant's alleged symptoms, he follows a two-step process: first, he considers whether the medical evidence shows an impairment that "could reasonably be expected to produce the pain or other symptoms alleged," and second, if such an impairment is shown, the ALJ evaluates the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. 20 C.F.R. §§ 404.1529(a), (c)(1), 416.929(a), (c)(1) (effective June 13, 2011 to Mar. 26, 2017).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, an ALJ considers: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). The ALJ did not analyze these factors with regard to Ryan's alleged symptoms.

The ALJ afforded "little weight" to P.A. Schwartz's opinion because he found it inconsistent with the fact that Ryan cared for a young child, admitted that she is independent in her daily activities, and attended college. Tr. 18. It is unclear, and the ALJ does not explain, how these circumstances undermine P.A. Schwartz's findings. The ALJ also concluded that P.A. Schwartz's opinion was "not supported by treatment notes showing such limitations." Tr. 18. In reaching this conclusion, "[t]he ALJ effectively required 'objective' evidence for a disease that eludes such measurement." *Green-Younger*, 335 F.3d at 108. This was improper.

The Court recognizes that P.A. Schwartz's opinion is not entitled to controlling weight because a physician's assistant is considered an "other source" and not an "acceptable medical source."[5] *See Eusepi v. Colvin*, 595 F. App'x 7, 8-9 (2d Cir. 2014) (summary order); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Nonetheless, evidence from a physician's assistant may be based on "special knowledge" of the claimant and "provide insight" into the severity of her impairments and functional limitations. SSR 06-03p, 2006 WL 2329939, at *2; *see also* SSR 12-2p, 2012 WL 3104869, at *4 (S.S.A. July 25, 2012) (noting that the ALJ may consider evidence from "other sources" when he evaluates the severity and functional effects of a claimant's fibromyalgia).

An ALJ is entitled to afford little or no weight to a physician's assistant's opinion, but he "generally should explain the weight given" to that opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome

---

[5] Although he did not co-sign her opinion, treating physician Dr. Michalski co-signed all of P.A. Schwartz's treatment notes. *See, e.g.*, 584, 586, 588, 759, 762, 765, 768, 772, 776. When a treating physician signs off on a medical opinion prepared by an "other source" like a physician's assistant, the ALJ should evaluate it "under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views." *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272 GLS/ESH, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014) (citations omitted). The Court does not suggest that the ALJ erred by not conducting a treating physician rule analysis; however, Dr. Michalski's repeated approval of P.A. Schwartz's notes should lend more support to her conclusions as to Ryan's ability to work.

of the case." SSR 06-03p, 2006 WL 2329939, at *6; *see also* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). Here, P.A. Schwartz's opinion affects the outcome of Ryan's case because, if credited, it establishes that Ryan is disabled.[6] But, for the reasons stated above, the Court cannot follow the ALJ's reasoning for discounting Ryan's opinion and therefore determines that remand is required.

It is worth noting that the record contains another medical opinion as to Ryan's physical ability to work. On August 25, 2014, consultative examiner Abrar Siddiqui, M.D., examined Ryan. Tr. 543-47. In his report, Dr. Siddiqui summarized Ryan's history of fibromyalgia and noted that she demonstrated pressure points in several areas due to fibromyalgia. Tr. 543, 545. Dr. Siddiqui opined that Ryan has an unlimited ability to sit, stand, climb, push, pull, or carry heavy objects, but that she has a "history of fibromyalgia, which is a chronic, debilitating disease with no effective treatment," that may cause functional limitations in the "near future."[7] Tr. 546. This should have given the ALJ pause, especially since P.A. Schwartz found that Ryan's fibromyalgia imposed significant limitations two years after Dr. Siddiqui opined that Ryan had no limitations but could develop them soon.

For all the reasons stated, the Court finds that remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 17) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 23) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this

---

[6] The vocational expert testified that an individual who is off task approximately 25% of the workday or absent more than four days per month is unemployable. Tr. 75-77.

[7] The ALJ afforded "some weight" to Dr. Siddiqui's opinion because "it is based on a personal examination of [Ryan] and his findings are consistent with his assessed limitations." Tr. 18. The ALJ did not explain how he reconciled this conclusion with the limitations he imposed in the RFC assessment or acknowledge Dr. Siddiqui's warning that Ryan could become limited due to fibromyalgia.

opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court will enter judgment and close this case.

    IT IS SO ORDERED.

Dated: June 17, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court